**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JUSTIN KUCHMA

                 Plaintiff,

    vs.

THE CITY OF NEW YORK, CORRECTION
OFFICER MICHAEL SINACORE in his
individual and official capacities, CORRECTION
OFFICER F/N/U BRIGNOL in his individual and
official capacities, CORRECTION OFFICER
F/N/U JENNINGS in his individual and official
capacities, CAPTAIN F/N/U DIAZ in her
individual and official capacities, CORRECTION
OFFICER JOHN DOE in his individual and
official capacities,

               Defendants.

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

By and through his attorneys, Randolph M. McLaughlin, Debra S. Cohen, and Danielle

B. Sullivan, Plaintiff alleges upon knowledge, information, and/or belief as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Justin Kuchma, while a pre-trial detainee on Rikers Island, suffered a

malicious, sadistic, degrading and premeditated sexual abuse and battery by a correction officer,

Defendant Sinacore, as multiple other officers and a supervisor looked on.

2.      Despite being on notice of the substantial risk of harm to Plaintiff, the City acted

with deliberate indifference to Plaintiff's safety when it failed to discipline Defendant Sinacore

and separate Plaintiff from his attacker after the sexual abuse and battery. As a result, Plaintiff

was forced to live in fear of additional attacks from Defendant Sinacore and suffered repeated

sexual harassment and threats by his attacker.

3.      Defendant City thus has made a mockery of its recent overtures of having a "zero-tolerance" policy toward all forms of sexual abuse and harassment. Instead, the City continued its longstanding custom of allowing such abuse. By failing to comply with its own procedures for preventing and responding to incidents of sexual abuse and harassment, including disciplining abusers and separating them from their victims, as memorialized on paper in the new Directive 5011, rendered them empty promises.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367 to hear and decide claims arising under state law.

5.      Venue in the Southern District of New York is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this action occurred within the district.

## PARTIES

6.      Plaintiff Justin Kuchma is a resident of New York County, New York. He resided at Rikers Island at the time these events occurred. From the time of the attack on May 29, 2016 to June 28, 2016, Plaintiff was detained at the Otis Bantum Correctional Center ("OBCC") at Rikers Island.

7.      Defendant The City of New York ("City") is a duly constituted municipal corporation of the State of New York.  Through the City of New York Department of Correction ("DOC") it operates a number of detention jails. The DOC, through its senior officials, promulgates and implements policies, including those with respect to the use, reporting, and investigation of force by uniformed staff, and access to medical and other program services mandated by local law and court orders.

8.      Defendant Correction Officer Michael Sinacore ("Sinacore") is a correction officer employed by the City. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

9.      Defendant Correction Officer F/N/U Brignol ("Brignol") is a correction officer employed by the City. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

10.      Defendant Correction Officer F/N/U Jennings ("Jennings") is a correction officer employed by the City. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

11.      Defendant Captain F/N/U Diaz ("Diaz") is a correction officer employed by the City. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of her employment by the City. Said Defendant is sued in her individual and official capacities.

12.      Defendant Correction Officer John Doe ("John Doe"), whose name is unknown to Plaintiff at this time, is a correction officer employed by the City. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.      Correction officer assaults and sexual abuse are non-grievable under DOC's

Inmate Grievance Resolution Program.[1]  Plaintiff, however, called 311 in an effort to report the abuse.

## FACTUAL ALLEGATIONS

**The Attack by Defendant Sinacore**

14.     The incident complained of herein occurred on May 29, 2016, and began at approximately 11:00 a.m., at the Otis Bantum Correctional Center at Rikers Island, New York, NY.

15.     Plaintiff was a pretrial detainee at the facility.

16.     Plaintiff was housed in the SRG house, despite the fact that Plaintiff has no gang affiliation.

17.     Defendant Sinacore, as well as Defendants Brignol and Jennings, were assigned to recreational duty, a post which involved retrieving inmates from housing units and escorting them to and from the yard, and supervising the inmates in the yard during recreational time.

18.     While on duty, Defendant Sincaore, a white male, called a black detainee "a stupid Nigger" multiple times.

19.     Plaintiff, a white male, protested the use of the racial slur by Defendant Sinacore.

20.     Defendant Sinacore then called Plaintiff a "cracker" and a "faggot," and said to Plaintiff, "You think this stupid Nigger would stick up for you?"

21.     Upon making the aforementioned comments, other guards had to restrain Defendant Sinacore who began threatening Plaintiff with physical harm.

22.     Later that day, at approximately 8:00 p.m., Defendant Captain Diaz stated to Plaintiff that she needed to protect him and that she would escort Plaintiff to the cafeteria for his

---

[1] *See* Dep't of Corr., N.Y.C., Directive No. 3376, Inmate Grievance and Request Program (2012), at Appendix A.

meal.

23.     Plaintiff was unaware as to why he needed protection.

24.     On the way to the cafeteria, in the hall near the medication window, between the mess hall and the clinic, Plaintiff and Defendant Captain Diaz encountered Defendants Sinacore, Brignol, Jennings, and John Doe waiting at the bottom of the stairs.

25.     Plaintiff and Defendants were in the view of several monitoring cameras.

26.     As Plaintiff and Defendant Captain Diaz approached the group of guards, Defendant Sinacore grabbed Plaintiff and threw him against the wall.

27.     Defendant Sinacore ordered Plaintiff to spread his legs and kicked Plaintiff several times in the shins.

28.     As a result of the severe kicks, Plaintiff sustained contusions to his shins.

29.     After kicking Plaintiff's legs apart, Defendant Sinacore proceeded to sexually abuse Plaintiff.

30.     Defendant Sinacore grabbed and squeezed Plaintiff's testicles multiple times.

31.     Defendant Sinacore forcibly inserted his hands between Plaintiff's buttocks.

32.     While Defendant Sinacore sexually abused and battered Plaintiff, Defendant Sinacore stated, "You faggot. Do you like it? You like the way I am touching you, you faggot?"

33.     Defendant Sinacore then took off Plaintiff's shoes and threw them, along with Plaintiff's drinking cup, down the hallway.

34.     Defendant Sinacore then threatened Plaintiff, saying "I will get you…I know where there are no cameras."

35.     After physically abusing Plaintiff, Defendant Sinacore pulled Plaintiff's pants down and exposed his naked buttocks.

36.     Defendant Sinacore also pulled Plaintiff's shirt over his head.

37.     During the entire incident aforementioned, Defendants Jennings, Brignol, Captain Diaz and John Doe stood by and did nothing to prevent or stop the sexual abuse and batteries.

38.     Defendant Captain Diaz failed to intervene and failed to supervise the officers though she knew the attack constituted misconduct, as demonstrated by her lamely saying "Stop, you'll get in trouble." Defendant Sinacore simply told Defendant Captain Diaz, his supervisor, to shut up and continued to attack Plaintiff.

39.     Defendant Captain Diaz did nothing more to intervene or supervise her subordinates to prevent the attack.

**Following the Attack**

40.     Immediately after the incident, Plaintiff sought medical attention for his injuries, but was denied the same until several hours after the attack concluded.

41.     When Plaintiff finally received medical attention, he received a sexual assault assessment, photographs were taken of his injuries and Plaintiff was prescribed ibuprofen.

42.     While Plaintiff was receiving medical attention, Defendant Captain Diaz stated "This is a little more serious than I thought."

43.     Plaintiff was then returned to his same housing unit.

44.     The next morning, on May 30, 2016, Plaintiff called 311 and reported the incident.

45.     That same day, Plaintiff also called the Sexual Assault Hotline. The recording on the hotline, which Plaintiff had to pay for, informed him that the report would be kept confidential.

46.     Plaintiff was interviewed on several occasions regarding the incident by

individuals whom he believed to be officials investigating the incident, but has not been informed of the investigation's progress, to this day.

47.     Upon information and belief, no other actions were taken by DOC officials in response to the attack on Plaintiff and his report of the attack.

48.     Following the attack, Plaintiff did his best to avoid coming into contact with his attacker, including refraining from going into the yard for exercise out of fear of interacting with Defendant Sinacore, who continued to be assigned to that post.

49.     On June 22, 2016 while Plaintiff was receiving social services, he encountered Defendant Sinacore who proceeded to call him "a queer."

50.     On June 23, 2016, Defendant Sinacore tracked down Plaintiff as he was walking to dinner and started yelling at him and called him a "racist prick."

51.     That same day, Plaintiff heard Defendant Sinacore tell another inmate that he heard that Plaintiff was trying to sue him and that he was prepared for it.

52.     On June 27, 2016, Plaintiff saw Defendant Sinacore in the medical clinic. Defendant Sinacore told Plaintiff that he had a good lawyer.

53.     Defendant Sinacore continued to target Plaintiff, finding ways to leave his post in the recreation yard to come inside and harass Plaintiff.

54.     Plaintiff feared for his safety and felt as if Defendant Sinacore was stalking him.

55.     Plaintiff's anxiety medication had to be increased following the incident.

56.     Despite the ostensibly confidential nature of the abuse reported, Plaintiff believed that everyone in his unit, including the guards, knew about his complaints.

**Plaintiff's Transfer to Manhattan Detention Complex**

57.     On June 28, 2016, one month after the attack, Plaintiff filed a Notice of Claim and

the facility suddenly sprang into action.

58.     On the day the Notice of Claim was filed, Plaintiff's dorm was placed on lockdown. Inmates were not allowed to make phone calls nor were they allowed to watch television.

59.     Later in the afternoon, an alarm in Plaintiff's housing unit was rung and the pro team entered.

60.     Plaintiff was told to pack up his belongings and was taken to Manhattan Detention Complex ("MDC"), where he remains to this date.

61.     Once at MDC, Plaintiff's unit was not allowed to make phone calls. The reason they were given was that "people were calling 311 about sexual assaults."

62.     Since arriving at MDC, Plaintiff has been denied psychiatric treatment for the emotional and psychological injuries he sustained as a result of the aforementioned abuse.

**The Institutional Lack of Response to the Attack**

63.     On May 2, 2016 a new DOC Directive No. 5011 entitled Elimination of Sexual Abuse and Sexual Harassment ("Directive 5011") went into effect. Directive 5011's purpose is to establish DOC policies and procedures for "preventing, detecting, reporting, and responding to incidents of sexual abuse and sexual harassment against inmates in Department custody pursuant to the Prison Rape Elimination Act (PREA) of 2003."[2]

64.     Directive 5011§ (IV)(V)(5) defines sexual abuse of an inmate by staff to include, with or without consent, any "intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official

---

[2] Dep't of Corr., N.Y.C., Directive No. 5011, Elimination of Sexual Abuse and Sexual Harassment (May 2, 2016) at 1.

duties or where the staff member…has the intent to abuse, arouse, or gratify sexual desire."[3]

65.    Under this directive Defendant Sinacore's actions clearly constitute an instance of sexual abuse, as he intentionally and for no penological purpose, groped and squeezed Plaintiff's genitalia, groin and buttocks while saying "You faggot. Do you like it? You like the way I am touching you, you faggot?"

66.    Despite the fact that Defendants Brignol, Jennings, Captain Diaz and John Doe witnessed this incident, and despite the officers' duty to intervene, as well as the fact that Directive 5011 provides comprehensive and detailed instructions to DOC employees on how they are to respond to incidents of sexual abuse, upon information and belief, not one of the Defendants followed these procedures or took any action in response to the attack.

67.    For example, under the Directive 5011 § (VI)(D) entitled First Responder Responsibilities, upon observing an incident of sexual abuse DOC staff "shall…ensure the victim's safety by separating the victim from the alleged abuser" as well as "ensure the victim is escorted to the facility medical unit as soon as possible for appropriate assessment and treatment." [4]

68.    None of the officers intervened, and upon information and belief, Plaintiff was denied prompt access to medical care, as required by 5011 § (VI)(D). Furthermore, upon information and belief, Plaintiff was denied adequate mental and psychiatric health treatment for the injuries sustained herein.

69.    Directive 5011 § (VI)(B)(2)(b) further states that "for staff-on-inmate allegations, before the inmate is returned to the housing area…[an assessment shall be made to determine] the need to transfer the inmate to another facility or transfer the staff member to another housing

---

[3] *Id.* at 7-8.
[4] *Id.* at 24-25.

area and/or facility."[5] Further, under Directive 5011 § (VI)(B), "the on duty supervisor shall immediately initiate necessary action, or verify that action has been taken, to protect all physical evidence and ensure the safety and welfare of the inmate. The supervisor may make a temporary administrative reassignment of the victim and/or alleged perpetrator to protect the inmate involved in accordance with Department Crime Scene policy."[6]

70.    Upon information and belief, Plaintiff was returned to his housing unit and there was no assessment performed, or communication with the facility regarding the possible need to reassign or transfer Plaintiff or Defendant Sinacore to another housing area or facility.

71.    Upon information and belief, none of the individual Defendants complied with 5011 § (VI)(B).

72.    In fact, as alleged above, Plaintiff encountered Defendant Sinacore multiple times before finally being transferred to another facility.

73.    These interactions were a direct and proximate result of the facility's failure to comply with its own written policies regarding responding to sexual abuse, causing Plaintiff to live in fear of future attacks by Defendant Sinacore who demonstrated his easy access to Plaintiff.

74.    Under Directive 5011 § (VI)(B) entitled Reporting Procedures for Staff, Defendants were required to "immediately report the information or incident directly through their chain of command to include their immediate supervisor..." as well as "submit a written report providing any information received or observed that concerns sexual abuse or sexual harassment to the Tour Commander."[7]

---

[5] *Id.* at 24.
[6] *Id.* at 26.
[7] *Id.* at 23.

75.    Upon information and belief, none of the individual Defendants reported the incident or submitted a written report, as required by 5011 § (VI)(B).

76.    As alleged above, Plaintiff called 311 and the Sexual Abuse Hotline, to report the incident, in compliance with allowable reporting options under Directive 5011 § (VI)(A)(5)(c). Plaintiff was interviewed on several occasions regarding the incident by individuals whom he believed to be officials investigating the incident, but has not been informed of the investigation's progress.

## Culture of Deliberate Indifference to Sexual Abuse of Inmates by Correction Officers at OBCC and Rikers Island Jails

77.    Upon information and belief, Plaintiff is just one of many inmates at Rikers Island who have been victimized by correction officers and subjected to harassment and abuse of a sexual nature.

78.    Although Penal Law § 130.05(3)(f) (McKinney) criminalizes sexual abuse by officers in municipal jails, the DOC continually fails to adequately investigate and impose discipline upon correction officers who have been accused of sexual abuse.

79.    According to the DOC's own records, in 2015 there were 131 allegations of sexual abuse of an inmate by staff.[8] However, only one of those incidents was substantiated.[9] A finding that an allegation is 'unsubstantiated' is not to be confused with an 'unfounded' allegation as "[a]n 'unsubstantiated' finding may be the result of a poor-quality investigation or reflect the legitimate difficulty of gathering sufficient evidence."[10]

80.    The unwillingness of the DOC to protect inmates in its custody from sexual abuse

---

[8] Dep't of Corr., N.Y.C., Sexual Abuse Allegations and Incidents, *available at* http://www1.nyc.gov/assets/doc/downloads/pdf/Report_Regarding_Sexual_Abuse_Allegations_Incidents.pdf
[9] *Id.*
[10] Declaration of Letitia James, Public Advocate for the City of New York at 12, *Jane Doe v. City of New York*, No. 15 Civ. 03849 (S.D.N.Y Oct. 9, 2015) attached as Exhibit A.

and excessive force constitutes a policy and practice resulting in continuing abuses against inmates.

81.    As of the time of Plaintiff's attack, the pervasive culture of sexual abuse and harassment was well known to the DOC.

82.    The DOC was put on notice of the widespread sexual misconduct by correction officers in multiple ways.

83.    According to a U.S. Department of Justice ("DOJ") survey published in 2013, OBCC is one of the top twelve worst jails nationwide regarding sexual misconduct by staff.[11] Nationwide 3.2% of jail inmates report being sexually victimized,[12] while inmates at OBCC report a sexual victimization rate of 6.2%.[13] The OBCC population is about 1,700.[14]

84.    Also in 2013, *Khapesi v. City of New York*, No. 13 Civ. 4391 (S.D.N.Y. 2013), was filed, alleging that a former DOC correction officer, serving as a DOC chaplain at the time, repeatedly sexually abused a Rikers Island inmate, by "forcible oral penetration, digital penetration of the rectum, coerced masturbation, and forcible touching of Plaintiff's groin, genitals and buttocks."[15]

85.    In *Ayers v. City of New York*, No. 14 Civ. 08979 (S.D.N.Y. 2014), a detainee in the custody of DOC alleged that he was beaten and anally raped with a metal baton by correction officers while handcuffed to a hospital bed.

86.    In May 2015, the class-action case *Doe v. City of New York*, No. 15 Civ. 03849 (S.D.N.Y. 2015), was filed, alleging multiple sexual assaults by correction officers on female

---

[11] Allen J. Beck et al., Bureau of Justice Statistics, U.S. Dep't of Justice, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12*, at 13 (2013) *available at* http://www.bjs.gov/Content/pub/pdf/svpjril112.pdf.
[12] *Id.* at 67.
[13] *Id.* at 71.
[14] *Id.*
[15] Complaint at 2, *Khapesi v. City of New York*, No. 13 Civ. 4391 (S.D.N.Y. 2013).

inmates at the Rose M. Singer Center on Rikers Island.

87.    Also in May 2015, the Public Advocate petitioned the DOC to address these high rates of sexual victimization on Rikers Island by creating rules under the City Administrative Procedure Act.[16]

88.    In 2015, DOC applied for a U.S. Department of Justice; Bureau of Justice Assistance PREA Demonstration Grant and received $493,280 in order to implement policies and practices bringing the institution into compliance with the Prison Rape Elimination Act of 2003 (PREA).[17]

89.    The Moss Group Inc., a consultancy firm that specializes in bringing correctional facilities into compliance with the PREA, issued a Sexual Safety Assessment Report ("the Moss Report") for the purpose of "provid[ing] feedback to support NYC DOC in pursuing PREA compliance."[18]

90.    Despite the fact that OBCC was identified as one of the jails with the highest rates of sexual victimization nationwide, the Moss Group did not assess that particular facility.[19]

91.    The Moss Report concluded, "Overall there was a lack of understanding of current policy; a lack of PREA policy updates to correspond with procedural changes within the DOC; and a lack of communication and training specific to the needs of line staff specific to procedural changes."[20]

92.    Presumably, in response to the Moss Report's assessment of the DOC's appalling

---

[16] Declaration of Letitia James, Public Advocate for the City of New York at 12, *Jane Doe v. City of New York*, No. 15 Civ. 03849 (S.D.N.Y Oct. 9, 2015) at 1, attached as Exhibit A.
[17] Awards Made for "BJA FY 15 PREA Program: Demonstration Projects to Establish Zero Tolerance Cultures for Sexual Assault in Correctional Facilities: Local".
http://grants.ojp.usdoj.gov:85/selector/awardDetail?awardNumber=2015-RP-BX-
0004&fiscalYear=2015&applicationNumber=2015-H3321-NY-RP&programOffice=BJA&po=BJA
[18]   The Moss Group Inc., N.Y.C. Dep't of Corr., Sexual Safety Assessment Report (June 2015) at 5.
[19] *Id.*  at 4.
[20] *Id.*  at 40.

lack of compliance with PREA standards, the DOC adopted Directive 5011, discussed *infra*.

93.     As     referenced     herein,     upon     information     and     belief,     the
Defendant correction officers did not comply with their duties under Directive 5011, effectively
reducing it to empty words.

94.     Despite the City's claim to "zero tolerance" for sexual abuse and harassment, the
City continues to foster a culture conducive to sexual misconduct by failing to protect inmates
from sexual abuse, harassment and retaliation for reporting such misconduct, and by failing to
hold correction officers accountable for their misconduct.

## NOTICE OF CLAIM

95.     A Notice of Claim on behalf of Plaintiff, pursuant to New York General
Municipal Law § 50-e, was timely served upon Defendant City on June 28, 2016. More than
thirty days have elapsed without the matter being resolved by the City. The Notice of Claim
provided detailed information regarding the actions that the correction officers took during the
incident with Plaintiff, the injuries that Plaintiff sustained, and was sufficient to put the officers
and the City on notice of the conduct in which they were alleged to have engaged.

## FEDERAL CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*(In Violation of the Rights Secured under the*
*Fourth and Fourteenth Amendments and in Violation of*
*42 U.S.C. §1983 for Excessive Force Against All*
*Individual and Supervisory Defendants)*

96.     Plaintiff incorporates the allegations contained in the previous paragraphs of this
Complaint as if fully set forth herein.

97.     By reason of the foregoing, and by maliciously and sadistically kicking,
molesting, groping and threatening Plaintiff, Defendant Sinacore, acting within his capacity as a

DOC correction officer and employee, and within the scope of his employment, intentionally committed a willful, unlawful, unwarranted, and intentional sexual abuse and batteries upon Plaintiff.

98. The sexual abuse and batteries committed by Defendant Sinacore was unnecessary and unwarranted in the performance of his duties as a correction officer and employee of DOC, constituting an unreasonable and excessive use of force.

99. Defendants Jennings, Brignol, Captain Diaz, and John Doe, by witnessing the attack in close proximity, failed to take reasonable steps to intervene to prevent the excessive use of force by Defendant Sinacore, though they were presented with ample realistic opportunities to do so.

100. Said Defendants failed to comply with the requirements of the aforementioned Directive, specifically provisions 5011 §§ (VI)(B) and (D).

101. Said Defendants, within the scope of their employment, were acting in their capacities as DOC correction officers and employees.

102. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

### SECOND CLAIM FOR RELIEF
*(In Violation of the Rights Secured under the*
*Fourth and Fourteenth Amendments and in Violation of*
*42 U.S.C. §1983 for Sexual Abuse Against All*
*Individual Defendants and Supervisory Defendants)*

103. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

104. By reason of the foregoing, and by maliciously and sadistically kicking, molesting, groping and threatening Plaintiff, Defendant Sinacore, acting within his capacity as a

DOC correction officer and employee, and within the scope of his employment, intentionally committed a willful, unlawful, unwarranted, and intentional sexual abuse and batteries upon Plaintiff.

105. The sexual abuse and batteries committed by Defendant Sinacore was unnecessary and unwarranted in the performance of his duties as a correction officer and employee of DOC, and served no penological purpose, rather it was undertaken with the intent to humiliate Plaintiff.

106. Defendants Jennings, Brignol, Captain Diaz, and John Doe, who witnessed the attack in close proximity, failed to take reasonable steps to intervene to prevent the sexual abuse and batteries by Defendant Sinacore, though they were presented with ample realistic opportunities to do so.

107. Said Defendants, upon information and belief, failed to comply with the requirements of the aforementioned Directive, specifically provisions 5011 § (VI)(B) and (D).

108. Said Defendants, within the scope of their employment, were acting in their capacities as DOC correction officers.

109. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

### THIRD CLAIM FOR RELIEF
*(In Violation of the Rights Secured under the*
*Fourth and Fourteenth Amendments*
*Supervisory Liability against Defendant Captain Diaz)*

110. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

111. Defendant Captain Diaz directly and personally participated in the violation against Plaintiff by escorting Plaintiff directly to his attacker, and failing to prevent the sexual

abuse and batteries or intervene as the abuse by her subordinate unfolded in front of her.

112.    Defendant Captain Diaz failed to comply with the requirements of the aforementioned Directive, specifically provisions 5011 § (VI)(B), (D) and (E).

113.    Defendant Captain Diaz was acting in her capacity as DOC correction officer, supervisor and employee, within the scope of her employment.

114.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

### FOURTH CLAIM FOR RELIEF
*(Monell Claim against the City of New York)*

115.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

116.    As a result of the aforementioned investigations, reports, and litigation, Defendant City was aware of, or should have been aware of, the culture of deliberate indifference to sexual abuse and sexual harassment of inmates by correction officers.

117.    The aforementioned investigations, reports, and litigation provide graphic details of the sexual abuse that inmates are subjected to by DOC staff.

118.    While the Defendant City adopted Directive 5011 to establish policies and procedures addressing incidents of sexual abuse and sexual harassment, they failed to fully implement it.

119.    Defendant City, through the DOC, and acting under color of law, permitted, tolerated, and was deliberately indifferent to the pattern and practice of sexual abuse and use of excessive force by staff, employed as correction officers, at the time of Plaintiff's attack.

120.    The widespread indifference to sexual abuse and use of excessive force of inmates in the City's jails constitutes a municipal policy, practice, or custom and led to Plaintiff's attack.

121.    Defendant City, upon information and belief, failed to properly train or supervise its correction officers on preventing, detecting, reporting, and responding to incidents of sexual abuse and sexual harassment against inmates in Department custody.

122.    Defendant City, upon information and belief, failed to properly train or supervise its correction officers in the use of physical force.

123.    The City, by its policies, practices, acts and omissions, caused Plaintiff to suffer the violation of his due process rights and right to be free from gratuitous and excessive force under the Fourth and Fourteenth Amendment to the United States Constitution.

124.    Plaintiff sustained the damages herein alleged as a direct and proximate result of the City's policies, practices or customs.

### STATE CLAIMS FOR RELIEF

**FIFTH CLAIM FOR RELIEF**
*(For Assault and Battery Against Defendant Sinacore)*

125.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

126.    Defendant without just cause, or provocation, used force against Plaintiff. The use of such force was not justified or warranted under the circumstances and constituted unreasonable and unnecessary force.

127.    The use of such force caused Plaintiff to suffer and experience a fear and apprehension of physical harm, severe emotional distress, pain and suffering, and physical injuries.

128.    The actions of Defendant Sinacore were intentional, malicious and were committed with wanton disregard for the rights of Plaintiff.

129.    The actions of said Defendant was unjustified and unnecessary in the performance

of his duty as a correction officer and were unreasonable, unwarranted and constituted an excessive use of force.

130.   The actions aforesaid constituted unlawful assaults and batteries upon Plaintiff.

131.   As a result of said conduct of said Defendant, Plaintiff suffered, and continues to suffer, physical, psychological, and emotional injuries.

132.   Defendant City is responsible under respondeat superior for the actions of said Defendant as the acts were committed within the scope of their employment as correction officers.

### SIXTH CLAIM FOR RELIEF
*(For Negligence Against All Defendants)*

133.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

134.   The individual correction officers, acting within the scope of their employment, negligently discharged their duties and thereby caused Plaintiff to sustain the injuries and deprivations aforementioned.

135.   The acts of negligence of said officers included, but are not limited to the viciously kicking, molesting, groping and threatening Plaintiff by Defendant Sinacore and the failure of the other Defendants to take reasonable steps to intervene to prevent the excessive use of force by Defendant Sinacore, though they were presented with ample realistic opportunities to do so.

136.   Defendant City is responsible under respondeat superior for the negligence of its correction officers committed within the scope of their employment.

137.   Defendant City was negligent by failing to properly train or supervise its correction officers on preventing, detecting, reporting, and responding to incidents of sexual

abuse and sexual harassment against inmates in Department custody.

138.   Defendant City was negligent by failing to properly train or supervise its correction officers in the use of physical force.

139.   Defendants were negligent in failing to provide Plaintiff adequate mental and psychiatric health care, following his attack by Defendant Sinacore.

140.   By the actions described above, each and every Defendant, jointly and severally, has committed the foregoing wrongful acts against Plaintiff, which are tortious under the Constitution and the laws of the State of New York.

## SEVENTH CLAIM FOR RELIEF
*(Intentional Infliction of Emotional Distress Against All Defendants)*

141.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

142.   Defendant Sinacore, intentionally and recklessly, conducted himself in a manner so shocking and outrageous that it exceeded all reasonable bounds of decency so as to cause severe emotional distress.

143.   Plaintiff sustained the damages herein alleged as a direct and proximate result of Defendant Sinacore's actions.

## EIGHTH CLAIM FOR RELIEF
*(Respondeat Superior Liability Against Defendant City of New York)*

144.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

145.   At all times pertinent hereto, Defendants were acting within the scope of their employment as correction officers of the DOC. Defendant City, through its agents, expressly or implicitly authorized the individual Defendants to violate Plaintiff's constitutional rights, as

described above.

146.     Defendant City is thus liable under the doctrine of respondeat superior, for the intentional and negligent torts of Defendants herein which were committed within the scope of their employment.

## PUNITIVE DAMAGES

147.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

148.     The acts of the individual Defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Plaintiff without regard for his well-being and were based on a lack of concern and ill-will towards the Plaintiff.  Such acts therefore warrant an award of punitive damages.

149.     The City is responsible for the actions of its employees as complained of herein under the doctrine of respondeat superior.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and relief against Defendants as follows:

a.   Compensatory damages in an amount of six million dollars;

b.   Punitive damages in an amount to be determined at trial;

c.   An award of the costs and expenses of this action including attorneys' fees to the Plaintiff pursuant to 43 U.S.C. §1988; and

d.   Any such other and further relief as this Court may deem appropriate.

## A JURY TRIAL IS DEMANDED

DATED:     New York, New York
           October 6, 2016

                              NEWMAN FERRARA LLP

                         By: _____
                              Randolph M. McLaughlin
                              rmclaughlin@nfllp.com
                              Debra S. Cohen
                              dcohen@nfllp.com
                              Danielle B. Sullivan
                              dsullivan@nfllp.com
                              1250 Broadway, 27th Floor
                              New York, New York 10001
                              Tel: 212-619-5400
                              Fax: 212-619-3090

                              *Counsel for Plaintiff*